UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| In re: ) | Bankr. No. 10-40718 |
| ) | Chapter 13 |
| LAWRENCE WILLIAM LEIFERMAN ) | |
| aka Larry Leiferman ) | |
| SSN/ITIN xxx-xx-2756 ) | |
| ) | DECISION RE:  CONFIRMATION |
| and ) | OF DEBTORS' PLAN |
| ) | DATED SEPTEMBER 7, 2010 |
| BARBARA JEAN LEIFERMAN ) | |
| SSN/ITIN xxx-xx-1106 ) | |
| ) | |
| Debtors. ) | |

The matter before the Court is Wells Fargo Bank, N.A.'s objection to Debtors' plan dated September 7, 2010.  This decision and the accompanying order constitute the Court's findings and conclusions under Fed.Rs.Bankr.P. 7052 and 9014(c).  For the reasons discussed below, the Court will sustain Wells Fargo's objection and will deny confirmation of Debtors' plan.

I.

The relevant facts are not in dispute.  Debtors admit Wells Fargo holds a note[1] secured by a mortgage[2] against their real property.  In their plan (doc. 11), Debtors proposed to modify the interest rate, monthly payment, and term of the note.  Wells Fargo objected to Debtors' proposed modification of its rights under the note

---

[1] A copy of the note is attached as Exhibit A (doc. 25-1) to Wells Fargo's brief (doc. 25).

[2] A copy of the mortgage is attached as Exhibit B (doc. 25-2) to Wells Fargo's brief (doc. 25).

(doc. 13).[3] The parties elected to submit the matter on briefs.

II.

A chapter 13 plan may not modify the rights of a holder of "a claim secured only by a security interest in real property that is the debtor's *principal residence*[.]" 11 U.S.C. § 1322(b)(2) (emphasis added). Section 1322(b)(2) reflects Congress'

> policy of singling out home lenders for extra protection in bankruptcy proceedings and thus encouraging the accessibility of home mortgages at affordable terms. *First Nat'l Fidelity Corp. v. Perry*, 945 F.2d 61, 63-64 (3d Cir.1991) (quoting Bankruptcy Reform Act of 1978: Hearings on S.2266 and H.R.8200 Before the Subcomm. On Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 95th Cong., 1st Sess. 707, 715 (1977) (statement of Robert E. O'Malley)) ... and [Congress' intent] to limit the ability of Debtors to modify "home mortgages" in order to "encourage the increased production of homes and to encourage individual ownership of homes as a traditional and important value in American life." *Federal Land Bank v. Glenn (In re Glenn)*, 760 F.2d 1428, 1434 (6th Cir.1985), *cert. denied sub nom. Miller v. First Federal of Mich.*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985).

*In re Bookout*, 231 B.R. 306, 309 (Bankr. E.D. Ark. 1999).

The bankruptcy code defines a debtor's principal residence as "a residential structure, *including incidental property*, without regard to whether that structure is attached to real property."  11 U.S.C. § 101(13A)(A)(emphasis added).  The bankruptcy code defines the incidental property included within the definition of a

---

[3] Wells Fargo originally objected to Debtors' attempting to modify its rights other than through an adversary proceeding. At the confirmation hearing, that objection morphed into an objection under 11 U.S.C. § 1322(b)(2).

debtor's principal residence as:

> (A) property commonly conveyed with a principal residence in the area where the real property is located;
>
> (B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and
>
> (C) all replacements or additions.

11 U.S.C. § 101(27B).

Debtors have not argued their real property is not their principal residence. The issue presented is thus whether Wells Fargo's claim is secured *only* by a security interest in Debtors' real property.

III.

On its face, the mortgage secures: "(i) the repayment of the [note], and all renewals, extensions[,] and modifications of the [n]ote; and (ii) the performance of [Debtors'] covenants and agreements under [the mortgage] and the [n]ote [doc. 25-2, at 3]." The collateral securing these obligations comprises Debtors' real property and "all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by [the mortgage]." *Id*. Each of these items of collateral falls within the parameters of § 101(13A)(A) and (27B).

Debtors argue the various covenants and agreements in the mortgage and the various amounts Wells Fargo might advance or disburse pursuant to the mortgage constitute additional security for Wells Fargo's claim that does not fall within the

---

parameters of § 101(13A)(A) and (27B). The Court disagrees. Debtors' performance of those covenants and agreements is secured *by* the mortgage; those covenants and agreements are not additional security for Wells Fargo's claim. Likewise, any sums Wells Fargo might advance or disburse would be added to the amount secured *by* the mortgage; those sums are not additional security for Wells Fargo's claim, either.

Debtors also argue the miscellaneous proceeds provided for in the mortgage[4] constitute additional security for Wells Fargo's claim that does not fall within the parameters of § 101(13A)(A) and (27B). Again, the Court disagrees. Debtors granted Wells Fargo a security interest only in their real property and all improvements, easements, appurtenances, fixtures, replacements, and additions (doc. 25-2, at 3). Debtors did not grant Wells Fargo a security interest in the miscellaneous proceeds. Debtors instead *assigned* those proceeds to Wells Fargo (doc. 25-2, at 8) ("All [m]iscellaneous [p]roceeds are hereby assigned to and shall be paid to [Wells Fargo]."). The assignment may well operate to protect Wells Fargo from loss in the event Debtors' real property is condemned, damaged, or destroyed (*see* doc. 25-2, at 8-9). However, the Court will not deem the assignment to be a security interest on that basis alone in the absence of language in the mortgage clearly indicating that

---

[4] Miscellaneous proceeds are defined in the mortgage as "any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds . . .) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property [doc. 25-2, at 2]."

was the parties' intent. *See In re Finesha Randle Dawson*, Bankr. No. 00-40405, slip op. at 2-4 (Bankr. D.S.D. Dec. 7, 2000) (relying on a statement in an assignment of proceeds that the assignee's interest in the proceeds was "the equivalent of an equitable assignment, lien, or other security arrangement" to find the assignment was really a security agreement).

For the foregoing reasons, the Court finds Wells Fargo's claim is secured only by a security interest in real property that is Debtors' principal residence. Consequently, Debtors may not modify Wells Fargo's rights under the note and the mortgage. The Court will enter an order denying confirmation of Debtors' plan dated September 7, 2010.

Dated: January 19, 2011.

BY THE COURT:

*[signature]*

Charles L. Nail, Jr.
Bankruptcy Judge

On the above date, a copy of this document was mailed or faxed to the parties shown on the Notice of Electronic Filing as not having received electronic notice and Debtor(s), if Debtor(s) did not receive electronic notice.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota